**SO ORDERED.**

**SIGNED this 13th day of June, 2023.**



_____
Mitchell L. Herren
United States Bankruptcy Judge

_____

PUBLISH

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

IN RE:

DANIEL PAUL ANSTAETT
ANDREA DAWN ANSTAETT

           Debtors.

Case No. 22-10019
Chapter 7

DARCY D. WILLIAMSON, Chapter 7 Trustee

           Plaintiff,

vs.

SOUTHWIND BANK and
ANDREA D. ANSTAETT,

           Defendants.

Adv. No. 22-5011

# ORDER DENYING SOUTHWIND BANK'S MOTION
# <u>FOR SUMMARY JUDGMENT</u>

Under Kansas law, a refinancing car lender must comply with the requirements of applicable Uniform Commercial Code (UCC) and certificate of title statutes[1] to perfect its security interest in a motor vehicle. If the lending creditor fails to deliver a title statute's specified documents and fee to the Division of Motor Vehicles of the Kansas Department of Revenue (KDOR), it may result in the creditor's security interest being unperfected and subject to avoidance by the bankruptcy trustee.

The Chapter 7 trustee commenced this adversary proceeding under Bankruptcy Code § 544(a)(1) and § 551 to avoid Southwind Bank's security interest in debtor's vehicle as unperfected on the date of the bankruptcy petition and to preserve the lien for the benefit of the bankruptcy estate. Southwind Bank ("Bank"), which *refinanced* debtor's car loan prior to debtor's bankruptcy filing, moves for summary judgment on the trustee's claim, contending the Bank perfected its security interest.

KDOR created its E-lien system, an online portal available to lenders and car dealers, to assist them in submitting applications and documents to add and remove liens on electronic car titles. Using the E-lien system, the Bank erroneously submitted a security interest application (a notice of security interest, or NOSI) and paid a $2.50 fee prior to debtor's bankruptcy in an apparent attempt to perfect its security interest under KAN. STAT. ANN. § 8-135(c)(5), the certificate of title

---

[1] Referred to generally in portions of this Order as "title statutes."

Case 22-05011    Doc# 47    Filed 06/14/23    Page 2 of 23

statutory subsection governing a *newly purchased* vehicle and a purchase money lender with a purchase money security interest (PMSI).

As explained below, the Bank, as a refinancing lender with a non-PMSI in debtor's vehicle, did not properly perfect its interest pursuant to § 8-135(c)(6), which required delivery of the surrendered certificate of title, a secured title application for issuance of a new certificate of title, and a $10.00 fee to perfect the Bank's security interest. The Bank, acknowledging that it filed the incorrect application and paid the incorrect fee, contends that its security interest should be considered perfected and its lien should have priority because it substantially complied with the title statutes.

The summary judgment record before the Court establishes that the Bank did not comply, substantially or otherwise, with the applicable statutes governing lien perfection. The Bank's motion for summary judgment must therefore be denied.[2]

Jurisdiction

The bankruptcy court has jurisdiction over a trustee's proceeding to avoid a lien under § 544(a).[3]

Undisputed Material Facts

---

[2] Plaintiff Chapter 7 trustee Darcy Williamson, appears by Michael J. Morris. Southwind Bank appears by Dennis R. Davidson.

[3] 28 U.S.C. § 157(b)(1) and (b)(2)(K) and § 1334(b).

3

Debtors Daniel and Andrea Anstaett filed this Chapter 7 bankruptcy case on January 13, 2022. The Chapter 7 trustee commenced this avoidance action against Southwind Bank and debtor Andrea Anstaett[4] under 11 U.S.C. § 544(a)(1) and § 551 to avoid the Bank's alleged unperfected security interest in Anstaett's vehicle and preserve the same for the benefit of the bankruptcy estate.[5] The Trustee and Bank largely agree on the facts in this case; as such, the facts listed below are undisputed unless otherwise noted.

Anstaett originally purchased a 2016 Chevrolet Traverse on June 14, 2017. Her purchase was financed by USAA Federal Savings Bank, which took a security interest in the vehicle. USAA's lien was noted on the electronic title of the Traverse that the Kansas Department of Revenue (KDOR) held and maintained in its Passenger Vehicle Title and Registration System.

Anstaett refinanced her vehicle with the Bank on May 18, 2021, executing a $17,360 promissory note and a security agreement granting the Bank a security interest in the Traverse.[6] It is undisputed and confirmed by the subject promissory note that the purpose of the loan was to "REFINANCE AUTO LOAN."[7] That same

---

[4] The debtor, Andrea D. Anstaett, has not participated in this adversary proceeding. The Clerk's entry of default and the Court's entry of default judgment have been entered against Anstaett pursuant to FED. R. CIV. P. 55(a) and (b)(2) as made applicable in adversary proceedings by FED. R. BANKR. P. 7055.

[5] The debtors divorced at some time after filing their joint bankruptcy petition. Andrea was awarded the vehicle. Doc. 44, p. 3 at ¶ 7.

[6] Doc. 42, p. 8.

[7] Doc. 42, p. 10 (Note, Disclosure, and Security Agreement); Doc. 42, p. 8 at ¶ 4 (Affidavit of Bank president); Doc. 44, p. 2 at ¶ 2.

4

day, using the Kansas E-lien system described below, the Bank submitted a *security interest application* through the KDOR's online portal as its notice of security interest (NOSI) in an attempt to perfect its security interest.[8]

The KDOR created the Kansas E-lien system in 2006, after the Kansas legislature enacted law for the creation and maintenance of electronic titles for motor vehicles.[9] The E-lien system, as described by a KDOR representative,[10] is an online portal available to lenders and car dealers to electronically add or release liens on electronic car titles registered in Kansas. The system interfaces with KDOR's Passenger Vehicle Title and Registration System where electronic titles are held and maintained. A lender or dealer seeking to add a lien on a vehicle via the E-lien system inputs the owner's name and the vehicle's make, model, and VIN, and then, the E-lien software system searches the Vehicle Title and Registration System to determine whether a matching electronic title exists. If there is a match, the lien is added to the electronic title.

As relevant to this case, the E-lien system contains three potential transactions by a lender seeking to add a lien: (1) a *security interest application* for submitting an NOSI on a newly purchased vehicle for a fee of $2.50; (2) a *secured*

---

[8] Doc. 44 at p. 3 at ¶ 5.

[9] KAN. STAT. ANN. § 8-135d(a) (2021 Supp.). In Kansas, all car titles subject to a security interest are maintained electronically by the KDOR until the lien is satisfied, at which time the KDOR mails a paper title to the car owner. *See* KAN. ADMIN. REG. § 92-51-24(b) (2023).

[10] KDOR representative Lee Ann Phelps was deposed by the parties. She is the manager over the vehicle services unit of the KDOR. That unit includes commercial vehicles, titles and registrations, passenger vehicle titles and registration, liens, and regulation of dealerships and salespersons.

5

*title application* for creating a secured title, by adding a lien to a clear title, for a fee of $10.00; and (3) a *refinance secured title application* when there is an existing lien on the vehicle that has not been released by the previous lender, for a fee of $10.00. If a matching electronic title is found, the E-lien system lists the refinancing lender in a second lien position on the existing electronic title.

Using the E-lien system, the Bank submitted a *security interest application* (the equivalent of the statutory NOSI under KAN. STAT. ANN. § 8-135(c)(5) (2021 Supp.)) on May 18, 2021, even though this was not a newly purchased vehicle.[11] The Bank never submitted a *refinance secured title application*, the proper form for the Bank's refinancing of Anstaett's Traverse, nor did the Bank pay the $10.00 fee or follow up its NOSI with a *secured title application* after the E-lien system released USAA's original lien.[12]

When the Bank submitted the security interest application, the E-lien system matched an existing electronic title in the Passenger Vehicle Title and Registration System to Anstaett as the owner of the Traverse and its registration.[13] Because the existing title for the Traverse showed USAA's lien, the software system added the Bank's lien as a second lien on the title as of May 18, as shown by the system's "Title Snapshot," even though the Bank had not submitted a secured title or

---

[11] Doc. 42, p. 54–55 (Ex. 4 – Security Interest Application); Doc 42, p. 59 (Affidavit of Bank's loan assistant, Chelsey Swords).
[12] Doc. 44,. at p. 3 at ¶ 11.
[13] Doc. 43-1, p. 1.

6

refinance secured title application or $10.00 fee.[14]  On May 27, 2021 USAA issued its lien release, certifying that its lien had been satisfied.[15] USAA's lien release was not processed until September 10, 2021.[16] That lien release occurred some four months before Anstaett filed bankruptcy, and a new electronic title was created showing only the Bank's lien.[17] The exact date the new electronic title was created is unclear, but it is not material to this case. There is no contention from either side that the current issue boils down to *when* perfection occurred; rather, the question at hand, is whether perfection *ever* occurred.

Further, it is undisputed that anyone searching the KDOR records for liens against Anstaett's Traverse would have discovered the Bank's lien on the electronically-held title in 2021 and on the date of the bankruptcy petition, January 13, 2022. This is the primary basis of the Bank's argument that it substantially complied with the requirements for perfection.

Analysis

*Summary Judgment Standards*

Summary judgment is appropriate where the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of

---

[14] Doc. 42, p. 56 (Ex. 5)

[15] *Id.* at p. 57 (Ex. 6).

[16] *See* Doc. 42, p. 58 (Ex. 7). This Title Snapshot reflects a new title number "AB1490078" with an application date of "09/10/2021." The Title Snapshot for the May 18, 2021 addition of the Bank's lien shows a different title number "AB1106639." *Cf.* Doc. 42, p. 56 (Ex. 5).

[17] *See* Doc. 42, p. 58 (Ex. 7).

7

law.[18] The movant bears the burden to demonstrate that there is no genuine dispute.[19] In ruling on a motion for summary judgment, the court must draw all reasonable inferences from the record in favor of the non-moving party.[20] A genuine dispute of material fact exists if, based on the evidence, a reasonable jury could return a verdict for the non-moving party.[21] The non-moving party can avoid summary judgment if it identifies specific evidence that demonstrates there is a genuine issue of material fact for trial, or if the undisputed facts do not establish a sufficient legal basis to grant movant judgment as a matter of law.[22]

*Perfection of Security Interest in an Automobile*

Under § 544(a)(1), a Chapter 7 trustee has the rights and powers of a hypothetical lien creditor as of the date of the bankruptcy petition, whose rights are determined by state law.[23] In Kansas, a trustee's rights as a lien creditor take priority over a security interest that is unperfected on the date of the bankruptcy petition.[24] This means that if the Bank properly perfected its security interest in the Traverse, it held a perfected security interest on the date of the petition and its lien is superior to the Chapter 7 trustee. But if the Bank's security interest was

---

[18] FED. R. CIV. P. 56(a) applies to this adversary proceeding via FED. R. BANKR. P. 7056.
[19] *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).
[20] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[22] FED. R. CIV. P. 56(a). *See Langley v. Adams Cty.*, 987 F.2d 1473, 1476 (10th Cir. 1993); *In re QuVis, Inc.,* 446 B.R. 490, 493-94 (Bankr. D. Kan. 2011) (Even if there are no disputed material facts, movant has burden to show that those facts entitle movant to judgment as a matter of law); *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998).
[23] *Morris v. Hicks (In re Hicks),* 491 F.3d 1136, 1140 (10th Cir. 2007).
[24] *Id.* KAN. STAT. ANN. § 84-9-317(a)(2)(A) (2021 Supp.).

8

unperfected on the date of the petition, the trustee's interest is superior, and the trustee may avoid the Bank's lien and preserve it for the benefit of the bankruptcy estate.

Secured transactions in Kansas are governed by Article 9 of the Kansas Revised Uniform Commercial Code (UCC), codified in chapter 84 of the Kansas Statutes.[25] Generally, a secured creditor protects its interest in collateral from third parties that may claim an interest in the same collateral by filing a UCC financing statement with the appropriate office to perfect the secured creditor's interest.[26] But for certificate of title property such as motor vehicles, a secured creditor protects its interest by complying with the applicable certificate of title statute.[27] Compliance with the certificate of title statute is the equivalent of filing a financing statement.[28]

As amended in 2007, KAN. STAT. ANN. § 84-9-311(a)(2) (2021 Supp.) provides that the filing of a financing statement is not necessary or effective to perfect a security interest in property subject to

> any law of this state covering automobiles . . . which provides for a security interest to be indicated on a certificate of title. Such security interest shall be *deemed perfected upon the mailing or delivery of the notice of security interest and tender of the required fee to the appropriate state agency* as prescribed by subsection (c)(5) of K.S.A. 8-135 . . . *or* the *delivery of the documents appropriate under any such law to the appropriate state agency and tender of the required fee to the state*

---

[25] KAN. STAT. ANN. § 84-9-101 *et seq.* (2021 Supp.); *Stanley Bank v. Parish*, 46 Kan. App. 2d 422, 424, 264 P.3d 491, 494 (2011), *aff'd* 298 Kan. 755, 317 P.3d 750 (2014).

[26] *Stanley Bank,* 46 Kan. App. 2d at 425; KAN. STAT. ANN. § 84-9-310(a) (2021 Supp.).

[27] KAN. STAT. ANN. § 84-9-310(b)(3) (2021 Supp.) and § 84-9-311(a)(2).

[28] KAN. STAT. ANN. § 84-9-311(b) (2021 Supp.).

9

*agency*, as prescribed in subsection (c)(6) of K.S.A. 8-135 . . . . (Emphasis added.).[29]

Section 84-9-311(b) provides in pertinent part:

> Compliance with the requirements of a statute, regulation, or treaty described in subsection (a) for obtaining priority over the rights of a lien creditor is equivalent to the filing of a financing statement under this article. . . . *[A] security interest in property subject to a statute, regulation, or treaty described in subsection (a) may be perfected only by compliance with those requirements* . . . . (Emphasis added).

### *Kansas Certificate of Title Statute*

In Kansas, the certificate of title statute for motor vehicles is codified at KAN. STAT. ANN. § 8-135 (2021 Supp.) and is part of the Kansas Motor Vehicle Registration Act.[30] It has been amended numerous times over the years. Prior to 2007, the statute required notation of a lien on the certificate of title to perfect a creditor's security interest in a vehicle. The developed case law held that if the lien was not noted on the title (even if the result of an error or omission by a party other than the secured creditor) the secured creditor's interest was unperfected.[31] Under

---

[29] *See* § 84-9-311, Official UCC Comment 5 (". . . the Legislative Note to this section instructs the legislature to amend the applicable certificate-of-title statute to provide that perfection occurs upon receipt by the appropriate State official of a properly tendered application for a certificate of title on which the security interest is to be indicated."). The Kansas legislature amended § 84-9-311(a)(2) consistent with Comment 5 effective April 26, 2007, with similar amendments to subsection (c)(6) of the certificate of title statute, § 8-135.

[30] *See* KAN. STAT. ANN. § 8-126 *et seq.* (2021 Supp.).

[31] For previous case law, *see e.g., Morris v. Intrust Bank, N.A. (In re Anderson),* 351 B.R. 752 (Bankr. D. Kan. 2006) (applying § 8-135(c)(6) to 2003 refinancing transaction, and holding that bank's liens were unperfected because they were not noted on the electronic certificates of title, even though the bank had mailed applications for secured title showing its liens to the KDOR and the KDOR had failed to include its liens on the electronic certificate of title); *Morris v. Boeing Wichita Credit Union (In re Hicks),* Adv. No. 04-5072, Doc. 61 Memorandum Decision Granting Trustee's Complaint for Lien Avoidance (Bankr.

10

the current version of § 8-135, and as applicable during the events underlying this proceeding, a secured party perfects its interest in a vehicle upon the "mailing or delivery" of the required documents and fee as provided under § 8-135(c)(5) or (c)(6).[32] Under both provisions, the key event for perfection is delivery of the respective documentation and fee.[33]

In the case of a new purchase of a vehicle subject to a PMSI, § 8-135(c)(5) governs. The statute provides that the purchase money lender may deliver to the KDOR an NOSI, specifically defined under the Kansas Motor Vehicle Registration Act as a notice of a PMSI,[34] and a $2.50 fee within 30 days of the purchase and delivery of the vehicle. The "proper completion and timely mailing or delivery" of

---

D. Kan. Sept. 14, 2005), *aff'd* 491 F.3d 1136 (10th Cir. 2007) (applying § 8-135(c)(5) NOSI for 2003 purchase of car and agreeing with bankruptcy court that purchase money lender was only temporarily perfected because lien was omitted from the certificate of title)*; Redmond v. MHC Financial Services, Inc. (In re Barker),* 358 B.R. 399, 409–10 (Bankr. D. Kan. 2007) (NOSI temporarily perfects lien in truck between date of delivery and date of issuance of certificate of title with purchase money lender's lien noted thereon); *Mid American Credit Union v. Bd. of Cty. Comm'rs,* 15 Kan. App. 2d 216, 806 P. 2d 479, *rev. denied* 248 Kan. 996 (1991) (same regarding a purchase-money transaction and NOSI under § 8-135(c)(5)).

[32] Section 84-9-311(a)(2).

[33] Section 84-9-311(b). Prior case law had provided that actual notation of the lien on the certificate was required for perfection. Julian B. McDonnell, revision by James P. Nehf, 1C SECURED TRANSACTIONS UNDER THE UCC § 18.03[2][a] (2023) (providing that the line of cases requiring the actual notation on the certificate of title as an essential element to perfection was overturned by the Kansas legislature and "[t]he statute now explicitly states that delivery of the notice along with the required fee will perfect the interest." [in the case of a new purchase under § 8-135(c)(5)]).

[34] *See* KAN. STAT. ANN. § 8-126(bb) (2021 Supp.): "'Notice of security interest' means a notification to the division from a dealer or secured party *of a purchase money security interest . . . upon a vehicle that has been sold and delivered to the purchaser. . . ."* (Emphasis added).

the NOSI perfects the secured party's interest.[35] When an application for certificate of title is submitted, the KDOR issues a certificate of title with the purchase money lender's lien noted thereon. Delivery of the NOSI and associated fee perfects a PMSI.

In the case of a refinanced vehicle and a non-PMSI, § 8-135(c)(6) governs. The statute provides:

> . . . When a person acquires a security interest that such person seeks to perfect on a vehicle *subsequent to the issuance of the original title on such vehicle,* such person shall require the holder of the certificate of title to surrender the same and sign an application for a mortgage title[36] in form prescribed by the division. Upon such surrender such person shall immediately deliver the certificate of title, application, *and a fee of $10* to the division. *Delivery of the surrendered title, application, and tender of the required fee shall perfect a security interest in the vehicle as referenced in K.S.A. 84-9-311*, and amendments thereto. On and after July 1, 2007, only one lien may be taken or accepted for security for an obligation to be secured by a lien to be shown on a certificate of title for vehicles with a gross vehicle weight rating . . . of 26,000 pounds or less. A refinancing shall not be subject to the limitations of this act. A refinancing is deemed to occur when the original obligation is satisfied and replaced by a new obligation. Lien obligations created before July 1, 2007, which are of a continuing nature shall not be subject to the limitations of this act until the obligation is satisfied. *A lien in violation*

---

[35] Section 8-135(c)(5).

[36] The use of the term "mortgage title" in the statute can be somewhat confusing since the term mortgage generally refers to an interest or lien on real property that is recorded in the register of deeds office of the county where the property is located. In contrast, a creditor may have a security interest in personal property such as a vehicle; those security interests are governed by Article 9 of the Uniform Commercial Code. The term "mortgage title" is not defined in the Kansas Motor Vehicle Registration Act, KAN. STAT. ANN. § 8-126 (2021 Supp.) or Black's Law Dictionary (11th ed. 2019) but has appeared in § 8-135 for many years. This Court found reference to a mortgage title in *State Bank of Burden v. Augusta State Bank,* 207 Kan. 116, 118-19, 483 P.2d 1068 (1971). In that replevin action, the banks were fighting over priority to a debtor's trailers. The case's discussion suggests that an "application for a mortgage title" is nothing more than an application for a secured title (i.e., a certificate of title indicating that a vehicle is subject to a lien or security interest).

12

*of this provision is void.* Upon receipt of the surrendered title, application and fee, the division shall issue a new certificate of title showing the liens or encumbrances so created, but only one lien or encumbrance may be shown upon a title for vehicles with a gross vehicle rating of 26,000 pounds or less . . . . When a prior lienholder's name is removed from the title, there must be satisfactory evidence presented to the division that the lien or encumbrance has been paid. . . . (Emphasis added).

The emphasized language regarding delivery of the specified documents and fee to perfect a security interest in a refinance situation was added in 2007 to be consistent with § 84-9-311(a)(2).

Thus, for a secured party to perfect its security interest in a refinanced vehicle, the existing certificate of title must be surrendered, the secured party must submit a mortgage title application for certificate of title, and must pay the associated $10 fee. Once the first lienholder's lien is released, a new certificate of title is then issued showing the refinancing lender's lien. Although usually only one lien is allowed on a vehicle with a gross vehicle weight rating of 26,000 pounds or less, a refinance where one lien is replacing another is an exception if this subsection's provisions are followed. Subsequent liens not following this subsection's provisions are "void." Under subsection (c)(6), an NOSI does not perfect the refinancing lender's non-purchase money security interest. There is no purpose or place in the (c)(6) process for the filing of an NOSI.[37]

---

[37] *In re Anderson,* 351 B.R. at 754–56 (Bankr. D. Kan. 2006) (distinguishing § 8-135(c)(5) from (c)(6) and concluding that (c)(6) governs a refinance, or non-purchase money security interest in a vehicle); *Davis v. Credit Union of America (In re Lindahl),* Adv. No. 05-5084, Doc. 32 Memorandum Opinion at 10 (Bankr. D. Kan. Mar. 29, 2006) (rules pertaining to the filing of an NOSI apply to the sale and delivery of vehicles, not refinanced vehicles).

In this dispute between the Chapter 7 trustee and the Bank, the applicable certificate of title provision is § 8-135(c)(6) because the Bank's interest in the vehicle arose from a refinancing, not funding a new purchase and delivery of a vehicle to Anstaett. The Bank concedes that it did not file the E-lien system's *refinance secured title application* designed to implement a refinance under (c)(6) or pay the statutory $10 fee. Nonetheless, the Bank argues that its interest is perfected because it substantially complied with the statutory requirements when it submitted the E-lien system's electronic security interest application (NOSI), despite using the security interest application and paying the lesser fee designed for a new purchase and PMSI pursuant to § 8-135(c)(5).

<u>*Substantial Compliance Doctrine*</u>

KDOR developed the E-lien system in 2006, three years after the effective date of the electronic title statute.[38] KAN. STAT. ANN. § 8-135d provides that KDOR shall keep an electronic system to record all certificates of title subject to a lien. KDOR designed the E-lien system so that dealers and lenders can add and release liens electronically. These electronic titles must still comply with the provisions of § 8-135 for registering, transferring, and titling encumbered vehicles with paper titles.[39] Although § 8-135d(b) authorizes KDOR to promulgate any rules or regulations necessary to carry out this section, KDOR has not done so regarding

---

[38] KAN. STAT. ANN. § 8-135d(a) (2021 Supp.) effective January 1, 2003.
[39] *Id.; In re Greeson,* No. 09-11328, 2009 WL 1542770, at *4 (Bankr. D. Kan. June 2, 2009).

Case 22-05011    Doc# 47    Filed 06/14/23    Page 14 of 23

provisions pertaining to perfection of security interests or compliance with the certificate of title statute.[40]

Despite not promulgating such rules or regulations, KDOR designed its E-lien system to interface with the Vehicle Title and Registration System, which holds and maintains the electronic titles.[41] According to the deposition of its representative, it designed the system to err on the side of attaching a lien to a title record "to give the lender the best chance of having a security perfected lien" regardless of whether the proper application was filed.[42] "It's designed to – with an N[O]SI, it's designed to try to ensure that a lien attaches to the title record."[43] More simply, "the system isn't able to deal"[44] with the situation in which a creditor files the wrong form or does not pay the correct fee; "it will treat an incoming lien from the e-lien system" the same, whether "it was filed as a re-fi [refinance] or as an N[O]SI."[45] In doing so, the system treats NOSIs and refinance secured title applications exactly the same — "put it in the queue, search for any existing current

---

[40] *In re Barker*, 358 B.R. at 410 (noting that, although "the Kansas Secretary of Revenue is authorized to adopt rules and regulations to enforce [K.S.A. 8-135d] . . . the Court's research has uncovered none."). This Court has conducted a similar search for rules or regulations pertaining to § 8-135d and has uncovered none pertaining to perfection of security interests or compliance with the certificate of title statute, and neither party has brought any to the Court's attention. Two regulations were adopted in 2004 dealing with mailing and printing of certificate of titles, neither of which is pertinent here. *See* KAN. ADMIN. REG. § 92-51-24 and § 92-51-28.

[41] Doc. 42, p. 39 (Tr., p. 27;1–4).

[42] *Id.* at p. 31 (Tr., p. 19;25 – p. 20;1–15) (describing how the system is set up not to look "at how the lien came in, whether an N[O]SI was used or a secured title was used . . ." but "to err on the side of attaching the lien.").

[43] *Id.*

[44] *Id.* at p. 41–42 (Tr., p. 29;25 – p. 30;1).

[45] *Id.* (Tr., p. 29;25 – p. 30;1–6).

15

title and attach it if necessary.[46] In short, the KDOR's application of the E-lien system effectively ignores and renders § 8-135(c)(6) superfluous.

The title statutes make no mention of erring on the side of adding a lien if a creditor does not comply with statutory requirements. Rather, the statutes require a creditor to file the appropriate application and pay the associated fee based on how the creditor's interest arose.[47] This means the E-lien system, as presently designed, is not always aligned with §§ 84-9-311(a)(2), (b) and 8-135.[48] Indeed, in this case, the E-lien system did not implement the requirements of either § 8-135(c)(5) or (c)(6).

The E-lien system's failure to correspond with the statute creates confusing and frustrating legal problems, like the case at hand, when the creditor fails to submit the correct application and fee to perfect its interest. It can be argued that the E-lien system allows incorrect attempts to comply with the statutory framework of lien perfection and then provides a creditor with a false sense of security about its security interest.

---

[46] *Id.* at 42 (Tr., p. 30;2–6).

[47] Section 84-9-311(a)(2), and (b) ("may be perfected only by compliance with those requirements"); § 8-135(c)(6).

[48] Administrative agencies such as the KDOR are creatures of statute, and their power depends upon the authorizing statutes; any exercise of authority must come from within the statutes. An administrative agency has no general or common law power to exercise. *See American Trust Admn'rs, Inc. v. Sebelius,* 273 Kan. 694, 44 P.3d 1253 (2002) (insurance commissioner's widely distributed bulletin is not a valid substitute for a properly promulgated rule or regulation); *Bruns v. State Bd. Of Technical Professions,* 255 Kan. 728, 877 P.2d 391 (1994) (written internal policy was a "regulation" and was not valid where it was not filed and published as a regulation). *See also* KAN. STAT. ANN. § 77-415 (2021 Supp.) et seq (requiring state agency rules and regulations to comply with the rules and regulations filing act to give any standard, requirement or policy binding legal effect).

16

Faced with this dilemma, and in an attempt to salvage a perfected lien, the Bank invokes the substantial compliance doctrine. Under this doctrine, a court will sometimes recognize a security interest as perfected despite a failure to strictly comply with the requirements of state law, so long as the creditor's interest is adequately noticed to potential creditors.[49]

In *In re Charles*, the Tenth Circuit Court of Appeals predicted that the Kansas Supreme Court would adopt a substantial compliance standard under the Kansas certificate of title law and UCC then in effect.[50] In that case the debtor entered into a Master Lease Agreement (MLA) with creditor CIT for four Kenworth trucks. It was disputed whether the MLA was a lease or a disguised sale and security interest transaction, but for purposes of CIT's motion for summary judgment on the trustee's avoidance claim, the bankruptcy court assumed, without deciding, that the MLA gave the debtor an ownership interest rather than a leasehold interest.[51] The bankruptcy court noted that CIT did not file an NOSI. Instead, CIT noted its interest on the reverse side of the certificate of title as owner (rather than lienholder) in the assignment of title section, and then filed the certificates of title with the KDOR, pursuant to § 8-135(c)(2) of the title statute.[52]

---

[49] *Morris v. CIT Group/Equip. Fin. (In re Charles)*, 323 F.3d 841, 846 (10th Cir. 2003).

[50] *Id.* (applying Kansas law of perfection and certificates of title in effect in 1997).

[51] *See In re Charles,* 268 B.R. 575, 576 (Bankr. D. Kan. 2001).

[52] *Id.* at 577. *See* KAN. STAT. ANN. § 8-135(c)(2) (providing for completion of the assignment section on the reverse side of the certificate of title, stating any liens or encumbrances on the vehicle at the time of the assignment, and then filing the certificate of title with the KDOR). CIT's characterization as owner on the certificates of title is not surprising if CIT

17

Importantly, the bankruptcy court found as uncontroverted fact that CIT was named as owner of each truck on the certificates of title and the titles were "duly filed" with the appropriate state agency.[53]

On these facts, the Tenth Circuit concluded that CIT's listing as an owner, rather than a lienholder on the filed certificate of title, regardless of whether that was correct, was sufficient to place potential secured creditors on notice of CIT's interest in the trucks.[54] Concluding that CIT substantially complied with the statute and its security interest was thus perfected, the Tenth Circuit affirmed the grant of summary judgment against the trustee.

The substantial compliance doctrine is not without limits. *Charles* is distinguishable from the instant case.[55] In *Charles,* the creditor was proceeding under § 8-135(c)(2), not (c)(6). The error on the filed certificates of title (if in fact it was an error, which was not decided by the Tenth Circuit) was identifying the creditor on the title as owner, rather than lienholder. Finally, the creditor "duly filed" the titles "with the appropriate state agency." Here, the Bank never delivered the refinance title application to the KDOR under § 8-135(c)(6), nor paid the $10 fee. This is sometimes described in cases as a "filing error."

---

believed it was the lessor of the trucks and the MLA was a true lease transaction. *See also* KAN. STAT. ANN. § 84-9-505(a) (2021 Supp.) (A lessor may file a financing statement or comply with a certificate of title statute using other terms such as lessor or owner, instead of "secured party.").

[53] 268 B.R. at 576.

[54] 323 F.3d at 845–46.

The case law regarding substantial compliance usually does not extend it to validate errors or noncompliance with the "filing" requirements for perfection under the Kansas certificate of title law.[56] The Kansas bankruptcy court has twice recognized this distinction and declined to extend substantial compliance to filing errors.[57] Though both cases involved a new purchase of a vehicle and attempted perfection of a PMSI, that factual distinction does not alter the applicable legal principle.

In *Barker*, the purchase money lender failed to file an NOSI to perfect its PMSI in debtor's newly purchased commercial truck. Absent the NOSI, the lender's PMSI was not perfected until the KDOR issued a certificate of title with notation of the lender's lien, meaning that the lender's PMSI was unperfected during the period between purchase of the truck and issuance of the certificate of title. Moreover, there was no evidence presented in *Barker* that the lender ever filed an application for a certificate of title with the KDOR to trigger the issuance of a certificate of title.

Instead, the lender submitted a front-side copy of the truck's MSO (Manufacturer's Statement of Origin) with a hand-written notation that the lender "held a lien" on the truck. The bankruptcy court held that the MSO was not the

---

[56] *In re Barker*, 358 B.R. at 410. *See also Morris v. Advantedge Quality Cars (In re Tholl),* Adv. No. 02-5158, 2004 WL 2334543, at *3 (Bankr. D. Kan. Feb. 17, 2004) (distinguishing *Charles*; car dealer's late filing of NOSI outside the 20-day safe harbor period of former § 8-135(c)(5) and § 547(c)(3) after delivery of the vehicle did not perfect its security interest and was an avoidable preference).

[57] *Id.* at 411 (substantial compliance doctrine has not been extended to filing requirements); *In re Johnson,* No. 18-20274-7, 2019 WL 4410351, at *4–5 (Bankr. D. Kan. Mar. 7, 2019) (quoting *Barker,* 358 B.R. 399*)*.

Case 22-05011    Doc# 47    Filed 06/14/23    Page 19 of 23

proper means for applying for a certificate of title.[58] Stating that the substantial compliance doctrine does not extend to filing requirements (*i.e.* filing the NOSI or the documents necessary to trigger issuance of a certificate of title), the lender's motion for summary judgment was denied. Even if the doctrine did apply to filing requirements, the lender did not substantially comply where it did not avail itself of the NOSI to protect its interest.[59]

Similarly, in *In re Johnson*, the creditor failed to perfect its security interest even though its lien was noted on the certificate of title because it did not timely file an NOSI, nor did it deliver the title with its lien noted thereon to the KDOR.[60] As such, the creditor "in no way . . . complied with the Kansas statutes for perfecting an interest in a motor vehicle—let alone substantially complied."[61] Because the creditor failed to show it held a perfected security interest in the vehicle, the creditor's motion for relief from the automatic stay was denied.

Together, these three cases (*Charles, Barker,* and *Johnson*) demonstrate a key distinction exists between a situation where a creditor files the correct application or document, even if it may contain an error—to which substantial compliance extends—and where a creditor fails to file the correct document and fee

---

[58] *Barker,* 358 B.R. at 410.

[59] *Id.* at 411 (stating that the "doctrine . . . should not shield a creditor that fails to avail itself of the protections provided by the simple, inexpensive act of filing an NOSI.").

[60] *In re Johnson*, 2019 WL 4410351 at *4–5.

[61] *Id.* at *5.

at all—to which substantial compliance does not. Other courts have likewise declined to extend the substantial compliance doctrine to filing errors.[62]

Here, the substantial compliance doctrine cannot be extended to perfect the Bank's claimed security interest. In filing the inapplicable electronic security interest application (NOSI) and paying the incorrect fee through the E-lien system, the Bank failed to comply, substantially or otherwise, with the filing requirements for perfection of a refinancing loan under § 8-135(c)(6). The Court declines to extend the substantial compliance doctrine to save the Bank's unperfected lien.

This is arguably a harsh result since, as the Bank argues, third parties and other secured creditors had pre-bankruptcy notice of the Bank's interest in debtor's vehicle if searching KDOR records. However, the E-lien system took it upon itself to note a lien despite the Bank's failure to follow the statute's application and fee requirements.

Section 8-135(c)(6) plainly states that when it comes to a refinancing—the replacement of one obligation with another resulting in the replacement of an old lien with a new lien on the vehicle—the failure to follow the provisions of § 8-

---

[62] *See e.g., Obuchowski v. Union Bank (In re Cottrell),* Adv. No. 05-1019, 2005 WL 1899489, at *5–6 (Bankr. D. Vt. 2005) (neither certificate of title noting bank's status as lien holder, nor certificate of title application was filed in any state office as of the date of the bankruptcy petition and declining to validate the bank's lien under substantial compliance doctrine); *Yamaha Motor Corp., USA v. Perry Hollow Mgmt. Co., Inc. (In re Perry Hollow Mgmt. Co., Inc.),* 297 F.3d 34, 40 (1st Cir. 2002) (failure to file UCC-1 financing statement with the clerk of the town where debtor conducted business was not saved by doctrine of substantial compliance; it was an error in the filing process); *In re Tholl,* 2004 WL 2334543, at *3 (distinguishing *Charles;* late-filed NOSI did not perfect security interest and was an avoidable preference).

135(c)(6) make the lien "void." Section 84-9-311(a)(2) likewise provides that a security interest is deemed perfected upon the "delivery of the documents appropriate under any such law to the appropriate state agency and tender of the required fee to the state agency, as prescribed in subsection (c)(6) of K.S.A. 8-135 . . . ." Section 84-9-311(b) states that "[e]xcept as otherwise provided in [inapplicable sections] for goods covered by a certificate of title, a security interest in property subject to a statute, regulation, or treaty described in subsection [84-9-311](a) may be perfected only by compliance with those requirements." The Court is bound by the plain language of these Kansas statutes setting forth the requirements for perfection of a lien.[63] As previously noted in *Barker*, KDOR's internal procedures do not rise to the level of regulations described in § 8-135, nor is its E-lien system determinative as to whether perfection occurs.[64] It is compliance by the creditor with the title statutes that matters.[65]

---

[63] The Kansas Legislature has codified a form of "substantial compliance" in its UCC. KAN. STAT. ANN. § 84-9-506(a) (2021 Supp.) provides that "[a] financing statement substantially satisfying the requirements of this part [Part 5 of Article 9] is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading." *See* § 84-9-501(a) (where to file financing statement); § 84-9-516 (what constitutes "filing"). This "forgiving" language is absent from the title statutes for motor vehicles.

[64] *In re Barker*, 358 BR at 410 n.40.

[65] In discussing prior Kansas statutory requirements for lien perfection on an automobile, the Tenth Circuit noted that the purpose of the UCC "is to place perfection of security interests solely within the power and prerogative of the creditor. When the law provides a simple and inexpensive way to protect the lien the creditor should be required to use it . . . ." *In re Kerr,* 598 F.2d 1206, 1209 (10th Cir. 1979).

22

<u>Conclusion</u>

The Court DENIES the Bank's motion for summary judgment on the trustee's § 544(a)(1) avoidance claim because the record does not establish that the Bank's security interest was properly perfected under KAN. STAT. ANN. §§ 84-9-311(a)(2) and 8-135(c)(6), as required by § 84-9-311(b), on the date of the bankruptcy filing, or that the Bank substantially complied with § 8-135(c)(6)'s requirements to deliver the required documents and corresponding fee to perfect its interest.

The Court notes that this ruling does not dispose of the entire adversary proceeding. The trustee also asserted in the alternative, avoidance of the Bank's lien under § 549 of the Bankruptcy Code. That claim would appear to be moot in light of the Court's ruling on the § 544 claim. In addition, the trustee did not move for summary judgment in its favor on the § 544 and § 551 claims. FED. R. CIV. P. 56(f), incorporated by FED. R. BANKR. P. 7056, permits the Court to grant summary judgment for a nonmovant, only after giving notice and a reasonable time to respond. Finally, it appears that the trustee's relief under § 551 is limited to preservation of the avoided lien for the benefit of the estate. To address these, and any other remaining issues with the parties, the Court will convene a status conference on a date to be noticed separately.

IT IS SO ORDERED.

### #

23

Case 22-05011    Doc# 47    Filed 06/14/23    Page 23 of 23